# CIRCUIT COURT OF BALTIMORE CITY.

Filed November 22, 1912.

CHARLES Y. CHAPMAN, ETC.,
VS.
ANNIE W. SWITZER, ET AL.

*John H. Grill* for plaintiff.
*J. Fred Conrad, Jr.,* for defendant.

BOND, J.—

The testimony is not sufficient to prove any fraud or undue influence in the conveyance to the defendant, Mrs. Switzer, of the real property in dispute. I shall therefore so adjudge in the decree to be signed.

But as to the decedent's watch, chain and charm, I have come to a contrary conclusion. The defendant, Mrs. Switzer, first testified that while her father had expressed an intention that these articles should pass to Mrs. Switzer's son after the decedent's death, still he himself wore the watch constantly until his death. Later the defendants testified to some use of the articles by the grandson during decedent's lifetime; but this testimony seemed to follow a belated comprehension on the part of the witnesses of the question of sufficiency of the proof of a gift mortis causa. The shifting and contradiction left me unable to believe their evidence on this point. The watch, chain and charm will be adjudged to the administrator.

There is one other item of property sought for. Defendants are charged with having inveigled the decedent into making a gift to them of $2,200, which he had previously kept in a savings bank, and which he withdrew just before making the alleged gift. The circumstances are perhaps such as to create doubt and suspicion of such a free gift, but I am not prepared to find that if the money were shown to have been given to the defendant, Mrs. Switzer, that gift was the product of undue influence. But in the first place I do not find sufficient proof of any gift. The money after decedent's death was in Mrs. Switzer's possession. But as she was then in charge of the house where the decedent lived, that fact alone proves nothing. To prove title in herself, then, prior to the death, she and her son testify that the decedent, shortly after withdrawing the money from bank, gave it to Mrs. Switzer at the supper table and told her it was for herself alone, and enjoined secrecy upon her. Then, the testimony proceeds, Mrs. Switzer hid the money in her own trunk, and later gave it for safekeeping to a Mr. Harrison, her daughter's father-in-law, without taking any receipt or note for it. Mrs. Switzer also admits that after her father's death she told her sister, crying at the time, that she, Mrs. Switzer, was at a loss to know what she would do now, and that she did not know where any money of her father's was, except $250, which the father gave her for his burial expenses. This was false, she says, but she said it because her father told her to do so. She

says further that she told this falsehood because her life had been threatened as a penalty for her getting more from her father than her brothers and sisters might receive. The story seems to me improbable in many respects. And taken in connection with an apparent readiness of this defendant and the other defendants to give exactly such evidence as would best meet the exigencies of the case, their absolute agreement on words used which, to my mind, suggested rehearsed rather than separately recollected facts, I have felt compelled to reject this story. I shall, therefore, adjudge this sum of money to the administrator.

A decree will be signed accordingly.